1  KAYE SCHOLER LLP
       Michael Malecek (Cal. Bar No. 171034)
2      michael.malecek@kayescholer.com
       Timothy Chao (Cal. Bar No. 261720)
3      timothy.chao@kayescholer.com
   Two Palo Alto Square
4  Suite 400
   3000 El Camino Real
5  Palo Alto, CA  94306-2112
   (650) 319-4500 (telephone)
6  (650) 319-4700 (facsimile)

7  Attorneys for Plaintiff GOOGLE INC.

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 GOOGLE INC.,                          CASE NO.

12        Plaintiff,                     **COMPLAINT FOR DECLARATORY
                                         JUDGMENT OF NON-INFRINGEMENT
13        v.                             OF U.S. PATENT NOS. 6,963,859;
                                         7,523,072; 7,774,280; 8,001,053; 7,269,576;
14 CONTENTGUARD HOLDINGS, INC.,          8,370,956; 8,393,007; 7,225,160; 8,583,556**

15        Defendant.                     **DEMAND FOR JURY TRIAL**

16

17

18        Plaintiff Google Inc. ("Google") seeks a declaration that Google does not directly or

19 indirectly infringe United States Patent Nos. 6,963,859, 7,523,072, 7,774,280, 8,001,053,

20 7,269,576, 8,370,956, 8,393,007, 7,225,160, and 8,583,556 as follows:

21

22

23

24

25

26

27

28

**NATURE OF THE ACTION**

1.      This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code.  Google requests this relief because Defendant ContentGuard Holdings, Inc. ("ContentGuard") recently filed a lawsuit in the Eastern District of Texas, Case No. 2:13-cv-01112 ("DRM Action")[1], claiming that several mobile device manufacturers, some of which are Google's customers, infringe some or all of United States Patent Nos.  6,963,859, 7,523,072, 7,774,280, 8,001,053, 7,269,576, 8,370,956, 8,393,007, 7,225,160, and 8,583,556 (the "patents-in-suit") by making, using, selling, and/or offering for sale products and methods that "use one or more of the Google Play 'apps' (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed inventions . . . Google Play Books and Google Play Music are available and have been used in accused devices made by each of the Defendants, including, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many other devices supplied by Defendants, Google Play Books and Google Play Music are and have been used to practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to practice ContentGuard's DRM patents on accused devices."   (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 52.) ContentGuard's litigation has threatened Google's business and relationships with its customers and partners, and created a justiciable controversy between Google and ContentGuard.

**THE PARTIES**

2.      Plaintiff Google Inc. ("Google") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043.  Google's mission is to organize the world's information and make it universally accessible and useful.  As part of that mission, Google developed Google Play Books, Google Play Music, and Google Play Movies.

---

[1] ContentGuard's Case No. 2:13-cv-1112, will hereinafter be referred to as the "DRM Action". The abbreviation "DRM" stands for digital rights management.

1          3.     Defendant ContentGuard is a corporation organized and existing under the laws of

2    the state of Delaware.  ContentGuard's principal place of business is at Legacy Town Center II,

3    6900 North Dallas Parkway, Suite No. 850, Plano, Texas, 75024.  On information and belief, until

4    mid-2013, ContentGuard's principal place of business was located at 222 N. Sepulveda Blvd.,

5    Suite 1400, El Segundo, California 90245-5644.  ContentGuard is admittedly a "business [that] is

6    focused on the licensing of [a] . . . patent portfolio" that produces only one product, and therefore

7    exists mainly to license and assert its patents.  (http://contentguard.pendrell.com/what-we-

8    do/overview.html.)

9    **JURISDICTIONAL STATEMENT**

10         4.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and

11   under the patent laws of the United States, 35 U.S.C. §§ 1-390.

12         5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331,

13   1338(a), and 2201(a).

14         6.     This Court has personal jurisdiction over ContentGuard.  Among other things,

15   ContentGuard has continuous and systematic business contacts with California.  On information

16   and belief, until mid-2013, ContentGuard's principal place of business was located at 222 N.

17   Sepulveda Blvd., Suite 1400, El Segundo, California 90245-5644.  At least during the period from

18   2009-2013, while it was based in El Segundo, California, ContentGuard actively pursued efforts to

19   license or otherwise monetize its patent portfolio, including the patents-in-suit.

20         7.     ContentGuard has "successfully licensed its DRM technologies for use in

21   smartphones and tablets" to companies with U.S. headquarters in California, including Nokia,

22   Toshiba, Fujitsu, Hitachi, and Sanyo.  (S*ee* DRM Action, Am. Compl., D.E. 22 at ¶ 38.)

23   ContentGuard stated that "these companies embraced ContentGuard's DRM technologies and

24   agreed to license use of those technologies for substantial royalties."  (*See* Ex. A, Pendrell Spring

25   Investment Conference Presentation, June 4, 2013 (hereinafter "Pendrell Presentation") available

26   at    http://files.shareholder.com/downloads/ICOG/2928081561x0x668008/ade99f13-1f92-4fe9-

27

28

COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

983c-865ad2b72304/Pendrell%20IR%20Stephens%20FINAL%20053113.pdf; s*ee* DRM Action, Am. Compl., D.E. 22 at ¶ 38.)[2]

8.      ContentGuard has purposefully directed into California its enforcement activities regarding the patents-in-suit.  On information and belief, ContentGuard contacted and/or met with California-based companies, including Apple, in order to discuss the licensing of ContentGuard's patent portfolio regarding DRM technology.

9.      In addition, ContentGuard has expressed its interest in pursuing, and its intent to pursue, license agreements with a host of companies based in California including Google, ACER, Adata, Adobe, Asus, DirecTV, Disney, Kingston, Kyocera, Landmark Theaters, Paramount, Sandisk, Transcend, Universal, Vizio, and 20th Century Fox.  (*See* Ex. A, Pendrell Presentation.)

10.     On information and belief, ContentGuard's licensing and enforcement efforts in and from California have generated substantial revenues.  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 38.)

11.     Additionally, ContentGuard conducts business by marketing and distributing a software application in the state of California and this judicial district.   The application, "CONTENTGUARD," is for sale via Apple Inc.'s ("Apple") iTunes store and available at least on Apple's mobile devices.  ContentGuard's application can be and has been downloaded in the state of California.  ContentGuard alleges that its mobile family of products, including its app, practice the '859 patent  by  providing  notice  under  35  U.S.C.  §  287(a)  on  its  website. (http://www.contentguard.com/.)

12.     On information and belief, a number of inventors of the patents-in-suit reside in California.  Mark J. Stefik, inventor of U.S. Patent Nos. 6,963,859 (the "'859 patent"), 7,523,072

_____

[2] Pendrell Corp. ("Pendrell") is a 90.1% shareholder of ContentGuard, and Time Warner, Inc. ("Time Warner"), is a 9.9% shareholder of ContentGuard.   Pendrell's headquarters are in Kirkland, Washington, and it maintains an office in San Francisco, California; its wholly owned subsidiary, Ovidian Group LLC, also has an office in Berkeley, California.  In addition, Time Warner, which is based in New York, has subsidiaries that are headquartered in California, including Warner Bros. Entertainment Inc. and New Line Cinema.

1   (the "'072 patent"), 7,269,576 (the "'576 patent"), 8,370,956 (the "'956 patent"), 8,393,007 (the

2   "'007 patent"), and 7,225,160 (the "'160 patent"), resides in Portola Valley, California.  Peter

3   Pirolli, inventor of the '859, '072, '576, '956, '007, and the '160 patents, resides in or around San

4   Francisco, California.   Ralph Merkle, inventor of the '576 and the '160 patents, resides in

5   Sunnyvale, California.  Mai Nguyen, inventor of U.S. Patent Nos. 7,774,280 (the "'280 patent")

6   and 8,001,053 (the "'053 patent"), resides in Sunnyvale, California.  Xin Wang, inventor of the

7   '280 and the '053 patents, resides in Los Angeles, California.  Thanh Ta, inventor of the '280

8   patent, resides in Irvine, California.  Eddie Chen, inventor of the '280 and the '053 patents, resides

9   in Los Angeles, California.

10      13.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), because a

11   substantial part of the events giving rise to Google's claim occurred in this district, and because

12   ContentGuard is subject to personal jurisdiction here.

13      14.     An immediate, real, and justiciable controversy exists between Google and

14   ContentGuard as to whether Google is infringing or has infringed the '859, '072, '280, '053, '576,

15   '956, '007, and '160 patents and U.S. Patent No. 8,583,556 (the "'556 patent").

16   **INTRADISTRICT ASSIGNMENT**

17      15.     For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b),

18   this Intellectual Property Action will be assigned on a district-wide basis.

19   **CONTENTGUARD'S THREATENED LITIGATION AGAINST GOOGLE**

20      16.     On December 18, 2013, ContentGuard brought a patent infringement action against

21   Amazon.com ("Amazon"), Apple, Blackberry Corporation (fka Research in Motion Corporation)

22   ("Blackberry Corporation"), Huawei Device USA, Inc. ("Huawei Device"), and Motorola

23   Mobility LLC ("Motorola") in the Marshall Division of the United States District Court for the

24   Eastern District of Texas.  DRM Action.  On January 17, 2014, ContentGuard amended its patent

25   infringement complaint in the DRM Action, adding additional defendants: Blackberry Limited

26   (fka Research in Motion Limited) ("Blackberry Limited"), HTC Corporation and HTC America,

27   Inc. (collectively "HTC"), Huawei Technologies Co. Ltd. ("Huawei Technologies"), Samsung

28

1  Electronics America, Inc. and Samsung Telecommunications America, LLC (collectively,

2  "Samsung").[3]

3        17.     In the DRM Action, ContentGuard alleges that each DRM Defendant infringes

4  some or all of the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents by making,

5  using, selling, and/or offering for sale products and methods that "use one or more of the Google

6  Play 'apps' (Google Play Books, Google Play Movies, and Google Play Music) to practice the

7  claimed inventions . . . Google Play Books and Google Play Music are available and have been

8  used in accused devices made by each of the Defendants, including, merely by way of example,

9  the Apple iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei

10 Ascend, the Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many

11 other devices supplied by Defendants, Google Play Books and Google Play Music are and have

12 been used to practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has

13 been used to practice ContentGuard's DRM patents on accused devices."  (*See* DRM Action, Am.

14 Compl., D.E. 22 at ¶ 52.)

15       18.     ContentGuard has alleged that the DRM Defendants' "ability to sell the accused

16 products is wholly dependent upon the availability of these [Google Play] 'apps' and the digital

17 content they make available to users."  (*See* e.g., *id.*at ¶ 52.)  ContentGuard further alleges that

18 "[t]hese [Google Play] 'apps' cannot be used with accused [DRM Defendant] . . . products without

19 infringing" the patents-in-suit.  (*See e.g.*, *id.* )

20       19.     Moreover, in publicly available material, ContentGuard has made clear that it

21 intends to target Google as part of its digital media licensing and patent portfolio program.  Of the

22 entities listed under the "Digital Media Licensing Program Representative Unlicensed

23 Companies" section of the Pendrell Presentation, six out of the fifteen companies that *do not* have

24 licenses related to Pendrell's Digital Media recently were named as defendants in ContentGuard's

25 DRM Action, suggesting that it is only a matter of time before Google (which similarly was listed

26 

27 [3] The defendants accused in both ContentGuard's initial and amended complaint in the DRM
   Action, will hereinafter be referred to as the "DRM Defendants."

28

1   as unlicensed in the Pendrell Presentation) will be accused in a ContentGuard suit involving the

2   patents-in-suit.  (*See* Ex. A, Pendrell Presentation.)

3       20.    On information and belief, ContentGuard intends the DRM Action to harm Google

4   Play Books, Google Play Music, and Google Play Movies, and to disrupt Google's relationships

5   with many of the DRM Defendants.

6       21.    For all these reasons, an actual controversy exists between Google and

7   ContentGuard regarding the alleged infringement of the '859, '072, '280, '053, '576, '956, '007,

8   '160, and '556 patents.

9   **GOOGLE DOES NOT INFRINGE THE PATENTS-IN-SUIT**

10       22.    No version of Google Play Books, Google Play Music, and/or Google Play Movies

11   provided by Google directly or indirectly infringes the '859, '072, '280, '053, '576, '956, '007,

12   '160, and '556 patents.

13       23.    To the best of Google's knowledge, no third party infringes the '859, '072, '280,

14   '053, '576, '956, '007, '160, and '556 patents by using Google Play Books, Google Play Music,

15   and/or Google Play Movies.  Google has not caused, directed, requested, or facilitated any such

16   infringement, much less with specific intent to do so.  Google Play Books, Google Play Music,

17   and/or Google Play Movies are not designed to infringe the '859, '072, '280, '053, '576, '956,

18   '007, '160, and '556 patents.  To the contrary, each of these applications is a product with

19   substantial uses that do not infringe any of these patents.

20   **FIRST COUNT**
**(Declaration of Non-Infringement of the '859 Patent)**

21

22       24.    Google restates and incorporates by reference the allegations in paragraphs 1

23   through 23 of this Complaint as if fully set forth herein.

24       25.    ContentGuard claims to own all rights, title, and interest in United States Patent

25   No. 6,963,859 (the "'859 patent").  A true and correct copy of the '859 patent is attached hereto as

26   Exhibit B.

27

28

26.     In the DRM Action, ContentGuard accuses all of the DRM Defendants: Amazon, Apple, Blackberry Corporation and Blackberry Limited (collectively "Blackberry"), HTC, Huawei Device and Huawei Technologies (collectively "Huawei"), Motorola, and Samsung of infringing the '859 patent, and alleges that each "actively induces content providers and/or end users of . . . [DRM Defendants'] products to infringe the '859 Patent by, among other things, (a) providing access to certain 'apps' (such as . . . Google Play 'apps') that use the ContentGuard DRM solution claimed in the '859 Patent, (b) providing instructions for using such 'apps'; (c) providing advertisings for using such 'apps' . . ." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 57.)

27.     The Amended Complaint in the DRM Action accuses three Google Play apps: Google Play Books, Google Play Music, and Google Play Movies.  Specifically, ContentGuard has accused the DRM Defendants of infringing the patents-in-suit by making, using, selling, and/or offering for sale products and methods that "use one or more of the Google Play 'apps' (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed inventions. . . .  Google Play Books and Google Play Music are available and have been used in accused devices made by each of the Defendants, including, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many other devices supplied by Defendants, Google Play Books and Google Play Music are and have been used to practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to practice ContentGuard's DRM patents on accused devices."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 52.)

28.     Additionally, the DRM Action alleges that all the DRM Defendants engage in the alleged activities because they "specifically intend" end users of their products "to use [Google Play] 'apps' that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '859 Patent."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 57.)  Furthermore, ContentGuard alleges that the DRM Defendants' "ability to sell the

1   accused products is wholly dependent upon the availability of these [Google Play] 'apps' and the

2   digital content they make available to users." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 57.)

3          29.     Moreover, the DRM Action alleges that all the DRM Defendants contributorily

4   infringe the '859 patent "because there is no substantial non-infringing use of these [Google Play]

5   'apps' on the accused . . . products . . . [and because] [t]hese [Google Play] 'apps' cannot be used

6   with accused [DRM Defendants] . . . products without infringing the '859 patent." (*See id*.)

7          30.     A substantial, immediate, and real controversy therefore exists between Google and

8   ContentGuard regarding whether Google Play Books, Google Play Music, and/or Google Play

9   Movies infringe the '859 patent.   A judicial declaration is necessary to determine the parties'

10  respective rights regarding the '859 patent.

11         31.     Google seeks a judgment declaring that Google Play Books, Google Play Music,

12  and/or Google Play Movies do not directly or indirectly infringe the '859 patent.

13                                     **SECOND COUNT**
                            **(Declaration of Non-Infringement of the '072 Patent)**
14

15         32.     Google restates and incorporates by reference the allegations in paragraphs 1

16  through 31 of this Complaint as if fully set forth herein.

17         33.     ContentGuard claims to own all rights, title, and interest in United States Patent

18  No. 7,523,072 (the "'072 patent").   A true and correct copy of the '072 patent is attached hereto as

19  Exhibit C.

20         34.     In the DRM Action, ContentGuard accuses all the DRM Defendants of infringing

21  the '072 patent, and alleges that each "actively induces content providers and/or end users of . . .

22  [DRM Defendants'] products to infringe the '072 Patent by, among other things, (a) providing

23  access to certain 'apps' (such as . . . Google Play 'apps') that use the ContentGuard DRM solution

24  claimed in the '072 Patent, (b) providing instructions for using such 'apps'; (c) providing

25  advertisements for using such 'apps' . . ." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 65.)

26         35.     The Amended Complaint in the DRM Action accuses three Google Play apps:

27  Google Play Books, Google Play Music, and Google Play Movies.   Specifically, ContentGuard

28

1    has accused the DRM Defendants of infringing the patents-in-suit by making, using, selling,

2    and/or offering for sale products and methods that "use one or more of the Google Play 'apps'

3    (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed

4    inventions. . . . Google Play Books and Google Play Music are available and have been used in

5    accused devices made by each of the Defendants, including, merely by way of example, the Apple

6    iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the

7    Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many other devices

8    supplied by Defendants, Google Play Books and Google Play Music are and have been used to

9    practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to

10   practice ContentGuard's DRM patents on accused devices."  (*See* DRM Action, Am. Compl., D.E.

11   22 at ¶ 52.)

12         36.    Additionally, the DRM Action alleges that all the DRM Defendants "specifically

13   intend" end users of their products "to use [Google Play] 'apps' that deploy, and content providers

14   to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '072

15   Patent."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 65.)  Furthermore, ContentGuard alleges

16   that the DRM Defendants' "ability to sell the accused products is wholly dependent upon the

17   availability of these [Google Play] 'apps' and the digital content they make available to users."

18   (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 65.)

19         37.    Moreover, the DRM Action alleges that all the DRM Defendants contributorily

20   infringe the '072 patent "because there is no substantial non-infringing use of these [Google Play]

21   'apps' on the accused . . . products . . . [and because] [t]hese [Google Play] 'apps' cannot be used

22   with accused [DRM Defendants] . . . products without infringing the '072 patent."  (*See id.*)

23         38.    A substantial, immediate, and real controversy therefore exists between Google and

24   ContentGuard regarding whether Google Play Books, Google Play Music, and/or Google Play

25   Movies infringe or have infringed the '072 patent.  A judicial declaration is necessary to determine

26   the parties' respective rights regarding the '072 patent.

27

28

COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

39.     Google seeks a judgment declaring that Google Play Books, Google Play Music, and/or Google Play Movies do not directly or indirectly infringe the '072 patent.

## THIRD COUNT
### (Declaration of Non-Infringement of the '280 Patent)

40.     Google restates and incorporates by reference the allegations in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.     ContentGuard claims to own all rights, title, and interest in United States Patent No. 7,774,280 (the "'280 patent"). A true and correct copy of the '280 patent is attached hereto as Exhibit D.

42.     In the DRM Action, ContentGuard accuses DRM Defendants Apple, Blackberry, HTC, Huawei, Motorola, and Samsung of infringing the '280 patent, and alleges that each of these defendants "actively induces content providers and/or end users of . . . [DRM Defendants'] products to infringe the '280 Patent by, among other things, (a) providing access to certain 'apps' (such as . . . Google Play 'apps') that use the ContentGuard DRM solution claimed in the '280 Patent, (b) providing instructions for using such 'apps'; (c) providing advertisements for using such 'apps' . . ." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 73.)

43.     The Amended Complaint in the DRM Action accuses three Google Play apps: Google Play Books, Google Play Music, and Google Play Movies. Specifically, ContentGuard has accused the DRM Defendants of infringing the patents-in-suit by making, using, selling, and/or offering for sale products and methods that "use one or more of the Google Play 'apps' (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed inventions. . . . Google Play Books and Google Play Music are available and have been used in accused devices made by each of the Defendants, including, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the Motorola Moto X, and the Samsung Galaxy S4. In each of these devices and many other devices supplied by Defendants, Google Play Books and Google Play Music are and have been used to practice ContentGuard's DRM patents. In addition, Google Play Movies is and has been used to

COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

1  practice ContentGuard's DRM patents on accused devices." (*See* DRM Action, Am. Compl., D.E.

2  22 at ¶ 52.)

3        44.    Additionally, the DRM Action alleges that DRM Defendants Apple, Blackberry,

4  HTC, Huawei, Motorola, and Samsung "specifically intend" end users of their products "to use

5  [Google Play] 'apps' that deploy, and content providers to distribute content that is protected by,

6  the ContentGuard DRM solutions claimed in the '280 Patent." (*See* DRM Action, Am. Compl.,

7  D.E. 22 at ¶ 73.) Furthermore, ContentGuard alleges that these DRM Defendants' "ability to sell

8  the accused products is wholly dependent upon the availability of these [Google Play] 'apps' and

9  the digital content they make available to users." (*See* DRM Action, Am. Compl., D.E. 22 at ¶

10  73.)

11        45.    Moreover, the DRM Action alleges that DRM Defendants Apple, Blackberry,

12  HTC, Huawei, Motorola, and Samsung contributorily infringe the '280 patent "because there is no

13  substantial non-infringing use of these [Google Play] 'apps' on the accused . . . products . . . [and

14  because] [t]hese [Google Play] 'apps' cannot be used with accused [DRM Defendants] . . .

15  products without infringing the '280 patent." (*See id.*)

16        46.    A substantial, immediate, and real controversy therefore exists between Google and

17  ContentGuard regarding whether Google Play Books, Google Play Music, and/or Google Play

18  Movies infringe or have infringed the '280 patent. A judicial declaration is necessary to determine

19  the parties' respective rights regarding the '280 patent.

20        47.    Google seeks a judgment declaring that Google Play Books, Google Play Music,

21  and/or Google Play Movies do not directly or indirectly infringe the '280 patent.

22  **FOURTH COUNT**
**(Declaration of Non-Infringement of the '053 Patent)**

23

24        48.    Google restates and incorporates by reference the allegations in paragraphs 1

25  through 47 of this Complaint as if fully set forth herein.

26

27

28

49.     ContentGuard claims to own all rights, title, and interest in United States Patent No. 8,001,053 (the "'053 patent").  A true and correct copy of the '053 patent is attached hereto as Exhibit E.

50.     In the DRM Action, ContentGuard accuses DRM Defendants Apple, Blackberry, HTC, Huawei, Motorola, and Samsung of infringing the '053 patent, and alleges that each of these defendants "actively induces content providers and/or end users of . . . [DRM Defendants'] products to infringe the '053 Patent by, among other things, (a) providing access to certain 'apps' (such as . . . Google Play 'apps') that use the ContentGuard DRM solution claimed in the '053 Patent, (b) providing instructions for using such 'apps'; (c) providing advertisements for using such 'apps' . . ." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 80.)

51.     The Amended Complaint in the DRM Action accuses three Google Play apps: Google Play Books, Google Play Music, and Google Play Movies.  Specifically, ContentGuard has accused the DRM Defendants of infringing the patents-in-suit by making, using, selling, and/or offering for sale products and methods that "use one or more of the Google Play 'apps' (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed inventions . . . Google Play Books and Google Play Music are available and have been used in accused devices made by each of the Defendants, including, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many other devices supplied by Defendants, Google Play Books and Google Play Music are and have been used to practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to practice ContentGuard's DRM patents on accused devices."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 52.)

52.     Additionally, the DRM Action alleges that DRM Defendants Apple, Blackberry, HTC, Huawei, Motorola, and Samsung "specifically intend" end users of their products "to use [Google Play] 'apps' that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '053 Patent."  (*See* DRM Action, Am. Compl.,

1   D.E. 22 at ¶ 80.)  Furthermore, ContentGuard alleges that these DRM Defendants' "ability to sell
2   the accused products is wholly dependent upon the availability of these [Google Play] 'apps' and
3   the digital content they make available to users."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶
4   80.)

5        53.     Moreover, the DRM Action alleges that the DRM Defendants Apple, Blackberry,
6   HTC, Huawei, Motorola, and Samsung contributorily infringe the '053 patent "because there is no
7   substantial non-infringing use of these [Google Play] 'apps' on the accused . . . products . . . [and
8   because] [t]hese [Google Play] 'apps' cannot be used with accused [DRM Defendants] . . .
9   products without infringing the '053 patent."  (*See id.*)

10       54.     A substantial, immediate, and real controversy therefore exists between Google and
11  ContentGuard regarding whether Google Play Books, Google Play Music, and/or Google Play
12  Movies infringe or have infringed the '053 patent.  A judicial declaration is necessary to determine
13  the parties' respective rights regarding the '053 patent.

14       55.     Google seeks a judgment declaring that Google Play Books, Google Play Music,
15  and/or Google Play Movies do not directly or indirectly infringe the '053 patent.

16  **FIFTH COUNT**
17  **(Declaration of Non-Infringement of the '576 Patent)**

18       56.     Google restates and incorporates by reference the allegations in paragraphs 1
19  through 55 of this Complaint as if fully set forth herein.

20       57.     ContentGuard claims to own all rights, title, and interest in United States Patent
21  No. 7,269,576 (the "'576 patent").  A true and correct copy of the '576 patent is attached hereto as
22  Exhibit F.

23       58.     In the DRM Action, ContentGuard accuses all the DRM Defendants of infringing
24  the '576 patent, and alleges that each "actively induces content providers and/or end users of . . .
25  [DRM Defendants'] products to infringe the '576 Patent by, among other things, (a) providing
26  access to certain 'apps' (such as . . . Google Play 'apps') that use the ContentGuard DRM solution

27
28

1   claimed in the '576 Patent, (b) providing instructions for using such 'apps'; (c) providing

2   advertisements for using such 'apps' . . ." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 87.)

3        59.    The Amended Complaint in the DRM Action accuses three Google Play apps:

4   Google Play Books, Google Play Music, and Google Play Movies.  Specifically, ContentGuard

5   has accused the DRM Defendants of infringing the patents-in-suit by making, using, selling,

6   and/or offering for sale products and methods that "use one or more of the Google Play 'apps'

7   (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed

8   inventions . . . Google Play Books and Google Play Music are available and have been used in

9   accused devices made by each of the Defendants, including, merely by way of example, the Apple

10  iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the

11  Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many other devices

12  supplied by Defendants, Google Play Books and Google Play Music are and have been used to

13  practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to

14  practice ContentGuard's DRM patents on accused devices." (*See* DRM Action, Am. Compl., D.E.

15  22 at ¶ 52.)

16       60.    Additionally, the DRM Action alleges that all the DRM Defendants engage in the

17  alleged activities because they "specifically intend" end users of their products "to use [Google

18  Play] 'apps' that deploy, and content providers to distribute content that is protected by, the

19  ContentGuard DRM solutions claimed in the '576 Patent." (*See* DRM Action, Am. Compl., D.E.

20  22 at ¶ 87.)  Furthermore, ContentGuard alleges that the DRM Defendants' "ability to sell the

21  accused products is wholly dependent upon the availability of these [Google Play] 'apps' and the

22  digital content they make available to users." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 87.)

23       61.    Moreover, the DRM Action alleges that all the DRM Defendants contributorily

24  infringe the '576 patent "because there is no substantial non-infringing use of these [Google Play]

25  'apps' on the accused . . . products . . . [and because] [t]hese [Google Play] 'apps' cannot be used

26  with accused [DRM Defendants] . . . products without infringing the '576 patent." (*See id*.)

27

28

62.     A substantial, immediate, and real controversy therefore exists between Google and ContentGuard regarding whether Google Play Books, Google Play Music, and/or Google Play Movies infringe or have infringed the '576 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '576 patent.

63.     Google seeks a judgment declaring that Google Play Books, Google Play Music, and/or Google Play Movies do not directly or indirectly infringe the '576 patent.

## SIXTH COUNT
### (Declaration of Non-Infringement of the '956 Patent)

64.     Google restates and incorporates by reference the allegations in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     ContentGuard claims to own all rights, title, and interest in United States Patent No. 8,370,956 (the "'956 patent").  A true and correct copy of the '956 patent is attached hereto as Exhibit G.

66.     In the DRM Action, ContentGuard accuses all the DRM Defendants of infringing the '956 patent, and alleges that each "actively induces content providers and/or end users of . . . [DRM Defendants'] products to infringe the '956 Patent by, among other things, (a) providing access to certain 'apps' (such as . . . Google Play 'apps') that use the ContentGuard DRM solution claimed in the '956 Patent, (b) providing instructions for using such 'apps'; (c) providing advertisements for using such 'apps' . . ." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 95.)

67.     The Amended Complaint in the DRM Action accuses three Google Play apps: Google Play Books, Google Play Music, and Google Play Movies.  Specifically, ContentGuard has accused the DRM Defendants of infringing the patents-in-suit by making, using, selling, and/or offering for sale products and methods that "use one or more of the Google Play 'apps' (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed inventions . . . Google Play Books and Google Play Music are available and have been used in accused devices made by each of the Defendants, including, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the

Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many other devices supplied by Defendants, Google Play Books and Google Play Music are and have been used to practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to practice ContentGuard's DRM patents on accused devices."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 52.)

68.     Additionally, the DRM Action alleges that the DRM Defendants "specifically intend" end users of their products "to use [Google Play] 'apps' that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '956 Patent."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 95.)  Furthermore, ContentGuard alleges that the DRM Defendants' "ability to sell the accused products is wholly dependent upon the availability of these [Google Play] 'apps' and the digital content they make available to users." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 95.)

69.     Moreover, the DRM Action alleges that all the DRM Defendants contributorily infringe the '956 patent "because there is no substantial non-infringing use of these [Google Play] 'apps' on the accused . . . products . . . [and because] [t]hese [Google Play] 'apps' cannot be used with accused [DRM Defendants] . . . products without infringing the '956 patent."  (*See id*.)

70.     A substantial, immediate, and real controversy therefore exists between Google and ContentGuard regarding whether Google Play Books, Google Play Music, and/or Google Play Movies infringe or have infringed the '956 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '956 patent.

71.     Google seeks a judgment declaring that Google Play Books, Google Play Music, and/or Google Play Movies do not directly or indirectly infringe the '956 patent.

## SEVENTH COUNT
**(Declaration of Non-Infringement of the '007 Patent)**

72.     Google restates and incorporates by reference the allegations in paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.     ContentGuard claims to own all rights, title, and interest in United States Patent No. 8,393,007 (the "'007 patent").  A true and correct copy of the '007 patent is attached hereto as Exhibit H.

74.     In the DRM Action, ContentGuard accuses all the DRM Defendants of infringing the '007 patent, and alleges that each "actively induces content providers and/or end users of . . . [DRM Defendants'] products to infringe the '007 Patent by, among other things, (a) providing access to certain 'apps' (such as . . . Google Play 'apps') that use the ContentGuard DRM solution claimed in the '007 Patent, (b) providing instructions for using such 'apps'; (c) providing advertisings for using such 'apps' . . ." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 103.)

75.     The Amended Complaint in the DRM Action accuses three Google Play apps: Google Play Books, Google Play Music, and Google Play Movies.  Specifically, ContentGuard has accused the DRM Defendants of infringing the patents-in-suit by making, using, selling, and/or offering for sale products and methods that "use one or more of the Google Play 'apps' (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed inventions . . . Google Play Books and Google Play Music are available and have been used in accused devices made by each of the Defendants, including, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many other devices supplied by Defendants, Google Play Books and Google Play Music are and have been used to practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to practice ContentGuard's DRM patents on accused devices."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 52.)

76.     Additionally, the DRM Action alleges that all the DRM Defendants engage in the alleged activities because they "specifically intend" end users of their products "to use [Google Play] 'apps' that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '007 Patent."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 103.)  Furthermore, ContentGuard alleges that the DRM Defendants' "ability to sell the

1 | accused products is wholly dependent upon the availability of these [Google Play] 'apps' and the

2 | digital content they make available to users." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 103.)

3 |       77.    Moreover, the DRM Action alleges that all the DRM Defendants contributorily

4 | infringe the '007 patent "because there is no substantial non-infringing use of these [Google Play]

5 | 'apps' on the accused . . . products . . . [and because] [t]hese [Google Play] 'apps' cannot be used

6 | with accused [DRM Defendants] . . . products without infringing the '007 patent." (*See id.*)

7 |       78.    A substantial, immediate, and real controversy therefore exists between Google and

8 | ContentGuard regarding whether Google Play Books, Google Play Music, and/or Google Play

9 | Movies infringe or have infringed the '007 patent. A judicial declaration is necessary to determine

10 | the parties' respective rights regarding the '007 patent.

11 |       79.    Google seeks a judgment declaring that Google Play Books, Google Play Music,

12 | and/or Google Play Movies do not directly or indirectly infringe the '007 patent.

13 |

**EIGHTH COUNT**
**(Declaration of Non-Infringement of the '160 Patent)**

14 |

15 |       80.    Google restates and incorporates by reference the allegations in paragraphs 1

16 | through 79 of this Complaint as if fully set forth herein.

17 |       81.    ContentGuard claims to own all rights, title, and interest in United States Patent

18 | No. 7,225,160 (the "'160 patent"). A true and correct copy of the '160 patent is attached hereto as

19 | Exhibit I.

20 |       82.    In the DRM Action, ContentGuard accuses all the DRM Defendants of infringing

21 | the '160 patent, and alleges that each "actively induces content providers and/or end users of . . .

22 | [DRM Defendants'] products to infringe the '160 Patent by, among other things, (a) providing

23 | access to certain 'apps' (such as . . . Google Play 'apps') that use the ContentGuard DRM solution

24 | claimed in the '160 Patent, (b) providing instructions for using such 'apps'; (c) providing

25 | advertisings for using such 'apps' . . ." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 111.)

26 |       83.    The Amended Complaint in the DRM Action accuses three Google Play apps:

27 | Google Play Books, Google Play Music, and Google Play Movies. Specifically, ContentGuard

28 |

1    has accused the DRM Defendants of infringing the patents-in-suit by making, using, selling,

2    and/or offering for sale products and methods that "use one or more of the Google Play 'apps'

3    (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed

4    inventions . . . Google Play Books and Google Play Music are available and have been used in

5    accused devices made by each of the Defendants, including, merely by way of example, the Apple

6    iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the

7    Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many other devices

8    supplied by Defendants, Google Play Books and Google Play Music are and have been used to

9    practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to

10   practice ContentGuard's DRM patents on accused devices." (*See* DRM Action, Am. Compl., D.E.

11   22 at ¶ 52.)

12       84.    Additionally, the DRM Action alleges that all the DRM Defendants engage in the

13   alleged activities because they "specifically intend" end users of their products "to use [Google

14   Play] 'apps' that deploy, and content providers to distribute content that is protected by, the

15   ContentGuard DRM solutions claimed in the '160 Patent." (*See* DRM Action, Am. Compl., D.E.

16   22 at ¶ 111.)  Furthermore, ContentGuard alleges that the DRM Defendants' "ability to sell the

17   accused products is wholly dependent upon the availability of these [Google Play] 'apps' and the

18   digital content they make available to users." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 111.)

19       85.    Moreover, the DRM Action alleges that all the DRM Defendants contributorily

20   infringe the '160 patent "because there is no substantial non-infringing use of these [Google Play]

21   'apps' on the accused . . . products . . . [and because] [t]hese [Google Play] 'apps' cannot be used

22   with accused [DRM Defendants] . . . products without infringing the '160 patent." (*See id*.)

23       86.    A substantial, immediate, and real controversy therefore exists between Google and

24   ContentGuard regarding whether Google Play Books, Google Play Music, and/or Google Play

25   Movies infringe or have infringed the '160 patent.  A judicial declaration is necessary to determine

26   the parties' respective rights regarding the '160 patent.

27

28

87.     Google seeks a judgment declaring that Google Play Books, Google Play Music, and/or Google Play Movies do not directly or indirectly infringe the '160 patent.

## NINTH COUNT
### (Declaration of Non-Infringement of the '556 Patent)

88.     Google restates and incorporates by reference the allegations in paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89.     ContentGuard claims to own all rights, title, and interest in United States Patent No. 8,583,556 (the "'556 patent").  A true and correct copy of the '556 patent is attached hereto as Exhibit J.

90.     In the DRM Action, ContentGuard accuses all the DRM Defendants of infringing the '556 patent in that each "actively induces content providers and/or end users of . . . [DRM Defendants'] products to infringe the '556 Patent by, among other things, (a) providing access to certain 'apps' (such as . . . Google Play 'apps') that use the ContentGuard DRM solution claimed in the '556 Patent, (b) providing instructions for using such 'apps'; (c) providing advertisements for using such 'apps' . . ." (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 119.)

91.     The Amended Complaint in the DRM Action accuses three Google Play apps: Google Play Books, Google Play Music, and Google Play Movies.  Specifically, ContentGuard has accused the DRM Defendants of infringing the patents-in-suit by making, using, selling, and/or offering for sale products and methods that "use one or more of the Google Play 'apps' (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed inventions . . . Google Play Books and Google Play Music are available and have been used in accused devices made by each of the Defendants, including, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the Motorola Moto X, and the Samsung Galaxy S4.  In each of these devices and many other devices supplied by Defendants, Google Play Books and Google Play Music are and have been used to practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to

1    practice ContentGuard's DRM patents on accused devices."  (*See* DRM Action, Am. Compl., D.E.

2    22 at ¶ 52.)

3        92.    Additionally, the DRM Action alleges that all the DRM Defendants engage in the

4    alleged activities because they "specifically intend" end users of their products "to use [Google

5    Play] 'apps' that deploy, and content providers to distribute content that is protected by, the

6    ContentGuard DRM solutions claimed in the '556 Patent."  (*See* DRM Action, Am. Compl., D.E.

7    22 at ¶ 119.)  Furthermore, ContentGuard alleges that the DRM Defendants' "ability to sell the

8    accused products is wholly dependent upon the availability of these [Google Play] 'apps' and the

9    digital content they make available to users."  (*See* DRM Action, Am. Compl., D.E. 22 at ¶ 119.)

10       93.    Moreover, the DRM Action alleges that all the DRM Defendants contributorily

11   infringe the '556 patent "because there is no substantial non-infringing use of these [Google Play]

12   'apps' on the accused . . . products . . . [and because] [t]hese [Google Play] 'apps' cannot be used

13   with accused [DRM Defendants] . . . products without infringing the '556 patent." (*See id.*)

14       94.    A substantial, immediate, and real controversy therefore exists between Google and

15   ContentGuard regarding whether Google Play Books, Google Play Music, and/or Google Play

16   Movies infringe or have infringed the '556 patent.  A judicial declaration is necessary to determine

17   the parties' respective rights regarding the '556 patent.

18       95.    Google seeks a judgment declaring that Google Play Books, Google Play Music,

19   and/or Google Play Movies do not directly or indirectly infringe the '556 patent.

20                                    **PRAYER FOR RELIEF**

21   WHEREFORE, Google prays for judgment and relief as follows:

22       A.    Declaring that Google Play Books, Google Play Music, and/or Google Play Movies

23   do not infringe any of the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

24       B.    Declaring that judgment be entered in favor of Google and against ContentGuard

25   on each of Google's claims;

26       C.    Finding that this an exceptional case under 35 U.S.C. § 285;

27       D.    Awarding Google its costs and attorneys' fees in connection with this action; and

28

1      E.     Such further and additional relief as the Court deems just and proper.

2                       **JURY DEMAND**

3      Google demands a jury trial on all issues and claims so triable.

4

5

6

7

8 DATED: January 31, 2014         Respectfully submitted,

9                       KAYE SCHOLER, LLP

10                       By_ /s Michael Malecek

11                       Michael J. Malecek
                      *Attorneys for Google Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28